## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MINNESOTA

| | |
|---|---|
| CURTIS PERRY, individually and on behalf of all others similarly situated, | Civil Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **<u>JURY TRIAL DEMANDED</u>** |
| HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC, | |
| Defendant. | |

Plaintiff Curtis Perry ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Harley-Davidson Motor Company Group, LLC ("Defendant" or "Harley-Davidson") for equitable relief and damages. Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

### <u>NATURE OF ACTION</u>

1.      This case is about Harley-Davidson's monopolization of the repair service market for the marketing, manufacture, and/or sale of consumer products, the warranties of which include statements that condition the continued validity of the warranty on the use of only an authorized repair service and/or authorized replacement parts (a "tying arrangement") or "unlawful repair restriction"). Tying arrangements that condition a consumer product's warranty on the use of a specific repair service in this manner violate state and federal law.  Had Plaintiff – or reasonable class members – been aware that the repair restriction was unlawful, he would not have purchased the Product, or would have paid significantly less for it.

2.      These Tying Arrangements, which condition a consumer product's warranty on the use of a specific repair service or the use of authorized parts, in this manner, violate state and federal law, including the Magnuson-Moss Warranty Act, 15 U.S.C. §262301–2312 (the "MMWA"), and its implementing regulations, 16 CFR §§ 700.1, *et seq*.

3.      Plaintiff brings his claims against Defendant individually and on behalf of a class of all other similarly situated indirect purchasers of the Products for: violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1,2; and Section 16 of the Clayton Act, 15 U.S.C. § 26; and for monetary damages pursuant state antitrust laws which allow indirect purchaser remedies.

## PARTIES

4.      Plaintiff Curtis Perry is a citizen resident of Edina, Minnesota.  Mr. Perry bought a Harley-Davidson Model FLTRXS Motorcycle from a dealership in Minnesota.  Mr. Perry purchased compatible parts for the Product from a Harley-Davidson Dealership in Minnesota.  Mr. Perry purchased the motorcycle, reasonably believing its warranty complied with state and federal law. However, the Product Mr. Curtis Perry purchased did not comply with state and federal law because of the unlawful repair restriction attached to the warranty that prohibited him from repairing it. Mr. Curtis Perry would not have purchased the Product, or would have paid significantly less for the Product, had he known that the Product did not comply with state and federal law.

5.      When Mr. Perry purchased the Product, he would have liked to have the option to repair his Product himself, but his warranty as written prohibited him from doing so.  Such an option was material and valuable to him.

6.      Defendant Harley-Davidson Motor Company Group, LLC is a Wisconsin limited liability company with its principal office or place of business at 3700 West Juneau Avenue, Milwaukee, Wisconsin. Defendant manufactured, advertised, offered for sale, sold, and

distributed Harley-Davidson motorcycles, parts, accessories, and other products to consumers throughout the United States.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

8.     Plaintiffs bring this lawsuit for injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and 28 U.S.C. § 1337(a).

9.     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the causes of action arise under the laws of the United States. This Court also has supplemental jurisdiction over the damage causes of action asserted under state law pursuant to 28 U.S.C. § 1367 because these causes of action are so related to the causes of action within the Court's federal question jurisdiction that they form part of the same case or controversy.

10.    Pursuant to 15 U.S.C. § 22 this Court has personal jurisdiction over Defendant because Defendant regularly transacts business in this District.

11.    This Court has personal jurisdiction over the Plaintiff who is a citizen of this state and purchased his motorcycle in this state.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's claims took place within this District and because Defendant is doing business in this district.

## COMMON FACTUAL ALLEGATIONS

### I.    Harley-Davidson

13.    Defendant manufactures, markets, and sells consumer products that include motorcycles, parts, accessories, and other products sold under the Harley-Davidson brand name (the "Products").

14.    Harley-Davidson Inc. was founded in Milwaukee, Wisconsin in 1903.  By 1920, it became the largest motorcycle manufacturer in the world.  In the 1970s Harley-Davidson began facing competition from Japanese motorcycle brands such as Honda, Kawasaki, Yamaha, and Suzuki.

15.    Defendant has advertised, marketed, offered for sale, sold, and distributed products through authorized dealers to consumers.

### II.    Harley-Davidson's Warranty

16.    Harley-Davidson's Products include a "written warranty" as defined by the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(6), in the form of a limited warranty ("Warranty Statement"). [1]

17.    Harley-Davidson offers purchasers of Harley-Davidson motorcycles a limited written warranty (the "Warranty"), which is described in its owner manual and constitutes a "written warranty."

18.    The length of Harley-Davidson's Warranty coverage was twenty-four months, "starting from the earlier of (a) the date of the initial retail purchase and delivery of the motorcycle from an authorized Harley-Davidson dealer; or (b) the third anniversary of the last day of the model year of the motorcycle." [2]

---

[1] *See* Exhibit A for FTC Complaint at § 4.
[2] *Id.* at § 5.

19.     The Harley-Davidson's Warranty, included in 2021, *inter alia,* various conditions of warranty coverage on the use of genuine Harley-Davidson parts and accessories, such as:

- Genuine Harley-Davidson parts are engineered and tested specifically for use on your motorcycle. Insist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact; and

- This limited warranty will not apply to any motorcycle … 1. Which has not been operated or maintained as specified in the owner's manual.… 4. Which has off-road or competition parts installed to enhance performance, a trailer hitch, or has other unapproved modifications (even if these modifications include genuine Harley- Davidson parts and accessories that are not approved for use on your motorcycle). These modifications may void all or parts of your new motorcycle limited warranty. See an authorized Harley-Davidson dealer for details; and

- The [u]se of aftermarket performance parts may void all or parts of your limited warranty. See an authorized Harley-Davidson dealer for details" and that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty; and

- While Harley-Davidson failed to fully set forth in its warranty what is covered by or excluded from the warranty, it instead, as described that the warranty directs the owner to check with a local Harley-Davidson dealer to fully understand the warranty's coverage, and that "[s]ome countries, states or other locations may require all regular maintenance and service work to be done by an authorized Harley-Davidson dealer for

your warranty to remain in effect. Check with your local Harley-Davidson dealer for local requirements.[3]

20.    In numerous instances, Defendant, through its warranty statements on the Products, condition warranty coverage on the usage of Defendant's repair services to perform maintenance and repair work, rather than allowing consumers to repair the product themselves or take it to a third-party repair service.

21.    Defendant has not provided genuine Harley-Davidson replacement parts to consumers without charge under the warranty. Defendant has not sought a waiver from the Federal Trade Commission that would permit it to condition warranty coverage on the use of genuine Harley-Davidson parts and accessories.

22.    Under the terms of the warranty, purchasers are bound to only use authorized repair services.

23.    Under Defendant's warranty, Defendant in effect provided parts in a manner which impeded or precluded the choice by the consumer to perform necessary labor to install such parts.

24.    By conditioning its warranty in this manner, Defendant has violated the tying prohibition in the Magnuson-Moss Warranty Act, which prohibits companies from conditioning their warranties on a consumer's use of any article or service (other than an article or service provided without charge under the terms of the warranty) identified by brand, trade, or corporate name.

25.    Defendant's practices also violate state laws, as well as Section 5(a)(1) of the Federal Trade Commission {"FTC") Act, 15 U.S.C. § 45(a)(1), which prohibits unfair or deceptive

---

[3] *Id.* at §§ 6-11.

actors or practices, as well as unfair methods of competition, in or affecting commerce. Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct.

## III.    **The Magnuson-Moss Warranty Act**

26.    The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312, is the federal law that regulates consumer warranties and the procedures used to resolve warranty disputes. It also directs the FTC to prescribe rules enforcing certain requirements pertaining to the use and content of consumer warranties.

27.    Section 2302(c) of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2302(c), prohibits any warrantor from conditioning a warranty on the consumer's using, in connection with the warranted product, any article or service (other than an article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name.

28.    An FTC Rule interpreting this provision specifically addressed warranty language (nearly identical to Defendant's warranty):

> No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)). For example, provisions such as, "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts," and the like, are prohibited where the service or parts are not covered by the warranty. These provisions violate the Act in two ways.  First, they violate the section 102(c), 15 U.S.C. 2302(c), ban against tying arrangements. Second, such provisions are deceptive under section 110 of the Act, 15 U.S.C. 2310, because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of "unauthorized" articles or service.

16 CFR § 700.10(c).

IV.     **Compatible Parts**

29.     The Parts at issue in this case are those compatible with Harley-Davidson bike models. Because Harley monopolizes the large American-manufactured bike market, such parts generally, refer to those compatible, not only with Harley-Davidson bikes but also with large American bikes in general. There is a multitude of parts manufacturers that make and sell such parts, which in part will be marketed as Harley-compatible. Various online retailers, for example, have sections specifically labeled as Harley-Davidson compatible under which both Harley-branded and third-party manufactured parts are sold.  Such third-party parts, which may often be priced lower than Harley branded parts, are a direct threat to the revenue that Harley enjoys from its parts segment – a threat that Harley has scrambled to control through its unlawful, anti-competitive tying scheme.

## TRADE AND COMMERCE

30.     During the Class Period, Defendant, directly or through its subsidiaries sold and continues to sell motorcycles and motorcycle parts in the United States in a continuous and uninterrupted flow of interstate commerce including through and into this judicial district.

31.     During the Class Period,  Defendant controlled the market for Harley-Davidson Motorcycles and motorcycle parts in the United States.

32.     Defendant's business activities substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States.

## RELEVANT MARKET

33.     **Harley-Davidson Motorcycle Market.** The first relevant market is Defendant's is the market for motorcycles

34.     The Harley-Davidson Motorcycle Market constitutes American made, roadgoing bikes sold as a bundle with factory warranties.  There are no available substitutes for Harley-

Davidson Motorcycles which are not interchangeable with other manufacturers. Harley-Davidson monopolizes the large American manufactured motorcycles market. American-made motorcycles are distinguishable from non-American motorcycles, even within the aforementioned category of large, roadgoing bikes. These are a discrete submarket that does not experience cross-elasticity of demand, such as Japanese motorcycles.

35.     The relevant geographic market for Harley-Davidson motorcycles is the United States.

36.     Defendant Harley-Davidson has market power in the relevant market through its control over access to the Component Parts.

37.     Defendant's effective total control of the Component Parts means that independent repair shops are unable to access the necessary resources to be able to meaningfully compete with Harley-Davidson. Similarly, any motorcycle owners who wish to perform their own repairs and/or maintenance are also unable to access the resources necessary to do so.

38.     **Harley-Davidson Compatible Parts Market.**  The second relevant market is the market for motorcycle parts which are Compatible with parts on a Harley-Davidson motorcycle. Defendant maintains market and monopoly power over the market for Compatible Parts. The Compatible Parts market is defined by compatibility with Harley-Davidson motorcycles.

39.     In order to repair a Harley-Davidson motorcycle, one must use only a part which is compatible with a Harley-Davidson, but is precluded from doing so, by the terms of the warranty.

40.     The relevant geographic market for Harley-Davidson Compatible Parts is the United States.

## DEFENDANT'S ANTICOMPETITIVE TYING SCHEME

41.     To maintain its dominant position in the market for parts, Harley-Davidson uses its monopoly power in the large, roadgoing American bike market (and specifically the manufacturer's warranty bundled with the new bike) to coerce customers not to purchase Compatible Parts from its competitors.  Harley-Davidson did this by unlawfully tying its warranty to its parts by requiring customers who bought its bikes to only use Harley-Davidson's Compatible Parts – or else risk voiding the warranty. This is illegal under the Magnuson-Moss Warranty Act.

42.     In June the FTC took action against Defendant. The regulatory agency ordered Harley-Davidson to stop this practice going forward.  However, the FTC lacks the authority to recoup the past overpayments for parts from all affected Harley-Davidson owners.

43.      According to the FTC's complaint, Defendant has been imposing illegal warranty terms that voided customers' warranties if they used anyone other than Defendant and Defendant's authorized dealers to get parts or repairs for their products. The FTC also alleged that Harley-Davidson failed to fully disclose all of the terms of its warranty in a single document, requiring consumers to contact an authorized dealership for full details. The FTC alleges that these terms harm consumers and competition.

44.     In a June 2022 Consent Agreement, the FTC has determined this type of tying scheme is illegal under the Magnuson-Moss Act.

## INJURY TO COMPETITION

45.     Harley-Davidson's anticompetitive practices in tying the bikes and warranties to the parts have restrained trade and have preserved and entrenched Harley-Davidson's market power.  Harley-Davidson's conduct has injured competition in the market for parts and has caused injury to owners in the form of anti-competitive pricing for parts.

46.     The injury to competition has caused injury to its competitors, as well as antitrust price injury for its independent dealers – injury that is then passed on, all or in part, to the ridership in the form of anti-competitive pricing. Harley-Davidson bike owners have paid higher prices for parts because of the tying, which has also impermissibly limited competitive choice for the riders.

47.     Harley-Davidson's tying was unlawful under the Magnuson-Moss Warranty Act. It had and could have no legitimate business or pro-competitive justifications because it is unlawful.   Unless injunctive and equitable relief is granted, Harley-Davidson may resume its unlawful conduct in whole or in part, and continue the resulting injury to competition.

## CLASS ACTION ALLEGATIONS

**I    Federal Injunctive Class Claims**

48.     The injunctive claims under the Sherman and Clayton Acts are brought on behalf of a class of indirect purchasers of Harley-Davidson motorcycles and parts ("Federal Injunctive Class") under Fed. R. Civ. P. 23(a) and 23(b)(2) and 15 U.S.C. § 26, encompassing:

All United States owners of a Harley-Davidson roadgoing motorcycle under factory warranty who purchased Compatible Parts from August 1, 2018 through the present ("Class Period").

**1.    Rule 23(a) Prerequisites**

49.     Prosecution of the claims of the Federal Injunctive Class as a class action is appropriate because the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedures are met:

(a)     The number of persons in the Federal Injunctive Class is in the thousands, and the members of the Class are therefore so numerous that joinder of all members of the Class is impracticable. Joinder also is impracticable because of the geographic diversity of the members of the Class, the need to expedite judicial relief, and Plaintiff's lack of

knowledge of the identity and addresses of all members of the Class.

(b)     There are numerous questions of law and fact arising from Harley-Davidson's restraint of trade which are common to the members of the Federal Injunctive Class. These include, but are not limited to, common issues as to (1) whether the Defendant has engaged in tying, restraint of trade or monopolization; and (2) whether this conduct, taken as a whole, has materially caused continuing and threatened antitrust price injury to be inflicted on indirect purchasers in the Class, as well as denial of free competitive choice.

50.     Plaintiff purchased Compatible Parts at artificially inflated prices as a result of Harley-Davidson's anticompetitive, unlawful conduct. Plaintiff's interests are coincident with and not antagonistic to those of the other members of the Federal Injunctive Class. Plaintiff is a member of the Federal Injunctive Class, has claims that are typical of the claims of the Class members, and will fairly and adequately protect the interests of the Class. Plaintiff and the members of the Class are similarly or identically harmed by the same systematic and pervasive concerted action.

51.     Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the members of the Class. There are no material conflicts between the claims of Plaintiff and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of the Class Representative Plaintiff and the other members of the Class.

**2.      Rule 23(b) Prerequisites**

52.     The prosecution of the claims of the Class as a class action pursuant to Rule 23(b)(2) is appropriate because Defendant has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, or corresponding declaratory relief, for the Class as a whole.

53.     In addition, the prosecution of the claims of each State Damages Class as a class action pursuant to Rule 23(b)(3) is appropriate because:

(a)     Questions of law or fact common to the members of each State Damages Class predominate over any questions affecting only its individual members; and

(b)     A class action is superior to other methods for the fair and efficient resolution of the controversy.

## FIRST CLAIM FOR RELIEF
### (Tying – Sherman Act § 1 and Clayton Act § 3)

54.     The allegations in the preceding paragraphs are incorporated as if fully stated herein.

55.     Harley-Davidson has engaged in an unlawful tying scheme in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 3 of the Clayton Act, 15 U.S.C. § 14.

56.     Motorcycles and warranties are sold as a bundle and are a single product for purposes of the relevant product market. The manufacturer warranty for a new Harley-Davidson motorcycle does not have independent use or value apart from the motorcycle it covers, and they are not sold separately.

57.     Harley-Davidson has tied the sale of its motorcycles and manufacturer's warranty (the tying product) to the purchase of its Compatible Parts (the tied product) by conditioning the warranty on the use of its own parts, in violation of the Magnuson-Moss Warranty Act. The possibility of voiding the manufacturer warranty, a valuable component of the bundle sold with the new bike, gave both dealers and riders a strong incentive to forgo the opportunity to purchase non-Harley-Davidson Compatible Parts, and instead to use Defendant's Compatible Parts, even when they were priced at a premium.

58.    The motorcycle (and the manufacturer warranty that covers it) is a separate and distinct product from the parts used to repair or customize the motorcycle. The existence of numerous makers and sellers of Compatible Parts separate from Harley-Davidson and its distribution network demonstrates the separateness of the two product markets.

59.    At all times relevant to this action, Harley-Davidson had market power in the market for the sale of Compatible Parts in the United States. Upon information and belief, the basis of which is information regarding the market share of Harley's largest competitor, Custom Chrome, Harley-Davidson sells at or near 80% of Compatible Parts in the United States. Moreover, there are high barriers to entry in the market for Compatible Parts, including both technological and regulatory barriers.

60.    Harley-Davidson's conduct has stifled competition on the merits in the Compatible Parts market.

61.    The amount of interstate commerce affected by Harley-Davidson's tying scheme is substantial. In 2021, Harley-Davidson had consolidated revenues in excess of $5 billion, and about 15% of its revenues are for parts.

62.    Harley-Davidson's conduct in conditioning its warranty on the purchase of its Compatible Parts constitutes an illegal tying agreement, and is a *per se* violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and Section 3 of the Clayton Act (15 U.S.C. § 14) or, in the alternative, is unlawful under the rule of reason, in that any purported pro-competitive justification for the tie is null and void, and is substantially outweighed by the anticompetitive effects in the Compatible Parts market.

63.    There are no legitimate business or pro-competitive justifications for Harley-Davidson's conduct and any purported legitimate business justifications are mere pretexts. This

specific conduct is a violation of the right to repair embodied in the Magnuson-Moss Warranty Act. Even if such a justification existed, any purported pro-competitive benefits can be achieved through alternative means less restrictive of competition.

64.     If not enjoined, Harley-Davidson would be able to and could in the future return to engaging in anticompetitive conduct that will further injure end users and competition.

65.     As a substantial, proximate and immediate result of Harley-Davidson's anticompetitive and unlawful actions, Plaintiffs and members of the proposed Federal Injunctive Class have been injured in their business or property, and continue to be threatened by such harm.

66.     Plaintiff and members of the proposed Federal Indirect-Purchaser Injunctive Class seek an injunction prohibiting the Defendant's anticompetitive practices pursuant to Clayton Act § 16, 15 U.S.C. § 26.

**SECOND CLAIM FOR RELIEF**
**(Monopoly Tying –Sherman Act § 2 and Clayton Act § 3)**

67.     The allegations in the preceding paragraphs are incorporated as if fully stated herein.

68.     Harley-Davidson has engaged in an unlawful tying scheme that is intended to maintain and increase its monopoly power, or dangerous probability of acquiring monopoly power, in the Large, Roadgoing Motorcycle and Compatible Parts Markets.

69.     Harley-Davidson entered into a Consent Agreement with the FTC on June 23, 2022, agreeing to findings that it had violated the Magnuson-Moss Act's anti-tying provision when it forced warranty-holders to buy only Harley-Davidson branded parts or lose warranty coverage.

70.     Because warranty-holders represented, effectively, any consumer who had bought a new Harley-Davidson bike within 24 months prior to their seeking repairs, Harley-Davidson was thus able to hold hostage this segment of potential customers, forcing them to only choose from

branded repair parts and thereby artificially increasing demand for them so that it could charge higher prices.

71.    Harley-Davidson's conduct violates Section 2 of the Sherman Act and Section 3 of the Clayton Act.

72.    As a substantial, proximate, and immediate result of Harley-Davidson's anticompetitive and unlawful actions, Plaintiff and members of the proposed Federal Injunctive Class have been injured in their business or property and continue to be threatened by such harm.

73.    Plaintiff and members of the proposed Federal Indirect-Purchaser Injunctive Class seek an injunction prohibiting the Defendant's anticompetitive practices pursuant to Clayton Act § 16, 15 U.S.C. § 26.

## THIRD CLAIM FOR RELIEF
### (Aftermarket Tying –Sherman Act § 2 and Clayton Act § 3)

74.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

75.    Harley-Davidson has engaged in an unlawful tying scheme that is intended to maintain and increase its dangerous probability of acquiring monopoly power in the Compatible Parts aftermarket.

76.    For the first two years after purchase, buyers of new Harley-Davidson bikes, bundled with warranties, have been forced to shop for only Harley-Davidson branded Compatible Parts if they wish to keep their warranties intact.

77.    The FTC has already found in their June 2022 Consent Agreement and Complaint that such a tying scheme is illegal under the Magnuson-Moss Act.

78.    There is no benefit to consumers in forcing them to maintain their motorcycles with only Harley-Davidson branded Compatible Parts as opposed to third-party Compatible Parts.

Rather, the only benefit of such a scheme is to the company itself, who has indicated explicitly in its SEC disclosures that their Compatible parts represent a key segment of revenue that is higher in margin.

79.     Consumers were not adequately warned that their purchase of a new Harley-Davidson motorcycle would lock them into using only Harley-Davidson branded parts for any needed repairs within the first two years after their purchase.

80.     Plaintiffs and members of the proposed Federal Indirect-Purchaser Injunctive Class seek an injunction prohibiting the Defendant's anticompetitive practices pursuant to Clayton Act § 16, 15 U.S.C. § 26.

### State Indirect-Purchaser Class Claims

81.     The allegations in the preceding paragraphs are incorporated as if fully stated herein.

82.     Pursuant to this Court's supplemental jurisdiction, and 28 U.S.C. § 1332 (d), Plaintiff and the proposed Class also seek damages under state antitrust statutes in 27 states and the District of Columbia, which accord damage remedies to indirect purchasers of Harley-Davidson Compatible Parts suffering passed-on antitrust price injury due to Harley-Davidson's unlawful conduct ("Indirect Purchaser Jurisdictions").

83.     These claims are prosecuted by a Class of Indirect Purchasers of Harley-Davidson Compatible Parts ("State Indirect Purchaser Damage Class" or "the Class") under Fed. R. Civ. P. 23(a) and 23(b)(3) encompassing: All United States owners of Harley-Davidson roadgoing motorcycle under factory warranty who indirectly purchased Harley-Davidson Compatible Parts from August 1, 2018 through the present ("Class Period").

84.    The Class is organized into Subclasses according to the Indirect-Purchaser Jurisdictions specified below.

1.      **Rule 23(a) Prerequisites**

85.    Prosecution of the claims of the State Indirect Purchaser Damage Class and its Sub-Classes as a class action is appropriate because the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met:

(a) The number of persons in the Class is in the thousands, and the members of the Class are therefore so numerous that joinder of all members of the Class is impracticable. Joinder also is impracticable because of the geographic diversity of the members of the Class, the need to expedite judicial relief, and Plaintiffs' lack of knowledge of the identity and addresses of all members of the Class.

(b) There are numerous questions of law and fact arising from Harley- Davidson's restraint of trade which are common to the members of the Class. These include, but are not limited to, common issues as to (1) whether the Defendant has engaged in a tying arrangement, in restraint of trade or by using its monopoly in the large, roadgoing American motorcycle market to maintain and extend its monopoly in the market for Compatible Parts in the Indirect Purchaser Jurisdictions; and (2) whether this conduct, taken as a whole, has materially caused antitrust price injury to be inflicted indirectly on members of the Class.

86.    Plaintiff purchased Harley-Davidson motorcycles covered by manufacturer warranties and purchased Harley-Davidson Compatible Parts at artificially inflated prices because of Harley-Davidson's anticompetitive conduct. Plaintiff's interests are coincident with and not antagonistic to those of the other members of the Class. Plaintiff is a member of the Class, has claims that are typical of the claims of the Class members, and will fairly and adequately protect

the interests of the Class. Plaintiff and the members of the Class are similarly or identically harmed by the same systematic and pervasive concerted action.

87.     Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class. There are no material conflicts between the claims of Plaintiff and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of the Class Representative Plaintiff and the other members of the Class.

**2.     Rule 23(b) Prerequisites**

88.     In addition, the prosecution of the claims of the Class as a class action pursuant to Rule 23(b)(3) is appropriate because:

(a) Questions of law or fact common to the members of the Class predominate over any questions affecting only its individual members; and

(b) A class action is superior to other methods for the fair and efficient resolution of the controversy.

**FOURTH CLAIM FOR RELIEF**
**(Arizona Rev. Stat. §§ 44-1401 *et seq.*)**
**(On Behalf of the Arizona Class)**

89.     The allegations in the preceding paragraphs are incorporated as if fully stated herein.

90.     By reason of the conduct alleged herein, Defendant has violated Arizona Rev. Stat. §§ 44-1401, *et seq.*

91.     Arizona Class members purchased Harley-Davidson Compatible Parts within the State of Arizona during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

92.     Through its unlawful tying scheme, Defendant acted in restraint of, or to monopolize, trade or commerce in the Compatible Parts market, a substantial part of which occurred within Arizona.

93.     Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within Arizona, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

94.     Defendant's violations of Arizona law were flagrant.

95.     Defendant's unlawful conduct substantially affected Arizona's trade and commerce.

96.     As a direct and proximate result of Defendant's unlawful conduct, members of the Arizona Class have been injured in their business or property and are threatened with further injury in that they paid and will pay supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

97.     By reason of the foregoing, members of the Arizona Class are entitled to seek all forms of relief available under Arizona Revised Stat. § 44-1401, *et seq.*

**FIFTH CLAIM FOR RELIEF**
**(California Business and Professions Code §§ 17200, *et seq.*)**
**(On Behalf of the California Class)**

98.     The allegations in the preceding paragraphs are incorporated as if fully stated herein.

99.     By reason of the conduct alleged herein, Defendant has violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

100.    California Class members purchased Compatible Parts within the State of California during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

101.    In order to maintain the price of Compatible Parts at supra-competitive levels at the California Class's expense, Defendant has, through its unlawful tying scheme, acted to restrain and exclude competition in the Relevant Market.

102.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, a substantial part of which occurred within California, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts market.

103.    Defendant's anticompetitive conduct was knowing and willful and constitutes a flagrant violation of Sections 17200, *et seq.*

104.    There is no pro-competitive justification for this anticompetitive conduct that outweighs its anticompetitive effects. Any possible pro-competitive benefits for such conduct could have been obtained by less restrictive alternatives.

105.    Defendant's anticompetitive conduct injured and continues to injure members of the California Class in their business or property in that they paid and will pay supra-competitive prices for Compatible Parts due to Defendant's anticompetitive conduct.

106.    Injury to members of the California Class was a direct, foreseeable, and proximate result of Defendant's anticompetitive conduct.

107.    As a result of Defendant's violation of Sections 17200, *et seq.*, members of the California Class seek treble damages and the costs of suit, including reasonable attorneys' fees, pursuant to Section 16750(a).

**SIXTH CLAIM FOR RELIEF**
**(District of Columbia Code Ann. §§ 28-4501 *et seq.*)**
**(On Behalf of the District of Columbia Class)**

108.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

109.    The policy of District of Columbia Code, Title 28, Chapter 45 (Restraints of Trade) is to "promote the unhampered freedom of commerce and industry throughout the District of Columbia by prohibiting restraints of trade and monopolistic practices."

110.    District of Columbia Class members purchased Compatible Parts within the District of Columbia during the Class Period.  But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

111.    Under District of Columbia law, indirect purchasers have standing to maintain an action under the antitrust provisions of the District of Columbia Code based on the facts alleged in this Complaint, because "[a]ny indirect purchaser in the chain of manufacture, production or distribution of goods…shall be deemed to be injured within the meaning of this chapter." D.C. Code § 28-4509(a).

112.    Through its unlawful tying scheme, Defendant acted in restraint of trade within the District of Columbia, and monopolized or attempted to monopolize the market for Compatible Parts within the District of Columbia, in violation of D.C. Code § 28-4501, *et seq.*

113.    Members of the District of Columbia Class were injured and are threatened with further injury with respect to purchases of Compatible Parts in the District of Columbia in that they paid and will pay supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct, and are entitled to all forms of relief, including actual damages, treble damages, and interest, reasonable attorneys' fees and costs.

## SEVENTH CLAIM FOR RELIEF
### (740 Ill. Comp. Stat. Ann. 10/3(1), et seq)
### (On Behalf of the Illinois Class)

114.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

115.    The Illinois Antitrust Act, 740 ILCS 10/1, *et seq.*, aims "to promote the unhampered growth of commerce and industry throughout the State by prohibiting restraints of trade which are secured through monopolistic or oligarchic practices and which act or tend to act to decrease competition between and among persons engaged in commerce and trade . . . ." 740 Ill. Comp.Stat. 10/2.

116.    Members of the Illinois Class purchased Harley Davidson Compatible Parts within the State of Illinois during the Class Period. But for the Defendant's conduct set forth herein, the price of those Compatible Parts would have been lower, in an amount to be determined at trial.

117.    Under the Illinois Antitrust Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. 740 Ill. Comp. Stat. 10/7(2).

118.    Through its unlawful tying scheme, Defendant engaged in the restraint of trade within Illinois, and monopolized or attempted to monopolize the market for Compatible Parts within Illinois, in violation of 740 Ill. Comp. Stat. 10/2.

119.    Members of the Illinois Class were injured and are threatened with further injury with respect to purchases of Compatible Parts in Illinois, in that they paid and will pay supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct, and are entitled to all forms of relief, including actual damages, treble damages, and interest; as well as reasonable attorneys' fees and costs.

### EIGHTH CLAIM FOR RELIEF
#### (Iowa Code §§ 553.1 *et seq.*)
#### (On Behalf of the Iowa Class)

120.   The allegations in the preceding paragraphs are incorporated as if fully stated herein.

121.   The Iowa Competition Law aims to "prohibit[] restraints of economic activity and monopolistic practices." Iowa Code § 553.2.

122.   Iowa Class members purchased Compatible Parts within the State of Iowa during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

123.   Defendant acted through its unlawful tying scheme to restrain or monopolize trade in the market for Compatible Parts, and attempted to establish or did in fact establish a monopoly, a substantial part of which occurred in Iowa, for the purpose of excluding competition or controlling, fixing or maintaining prices for Compatible Parts, in violation of Iowa Code §§ 553.1, *et seq.* Defendant's violations of Iowa law were willful or flagrant.

124.   Defendant's unlawful conduct substantially affected Iowa's trade and commerce.

125.   Members of the Iowa Class were injured and are threatened with further injury with respect to purchases of Compatible Parts in Iowa in that they paid and will pay supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct, and are entitled to all forms of relief, including actual damages, exemplary damages for willful conduct, reasonable attorneys' fees and costs, and injunctive relief.

## NINTH CLAIM FOR RELIEF
### (Kansas Stat. Ann §§ 50-101 *et seq.*)
### (On Behalf of the Kansas Class)

126.   The allegations in the preceding paragraphs are incorporated as if fully stated herein.

127.   The Kansas Restraint of Trade Act aims to prohibit practices which, inter alia, "tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state." Kan. Stat. Ann. §§ 50-112.

128.   Kansas Class members purchased Compatible Parts within the State of Kansas during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

129.   Under the Kansas Restraint of Trade Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Kan. Stat. Ann §§ 50-161(b).

130.   Defendant acted through its unlawful tying scheme to restrain or monopolize trade in the market for Compatible Parts, and attempted to establish or did in fact establish a monopoly, a substantial part of which occurred in Kansas, for the purpose of excluding competition or controlling, fixing or maintaining prices for Compatible Parts, and in doing so precluded free and unrestricted competition among themselves in the sale of Compatible Parts, in violation of Kan. Stat. Ann. § 50-101, *et seq.*

131.   Defendant's unlawful conduct substantially affected Kansas's trade and commerce.

132.   Members of the Kansas Class were injured and will continue to be injured with respect to purchases of Compatible Parts in Kansas in that they paid and will pay supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct, and are entitled to all forms of relief, including actual damages, reasonable attorneys' fees and costs, and injunctive relief.

## TENTH CLAIM FOR RELIEF
### (Me. Rev. Stat. Ann. tit. 5 § 205-A, *et seq.*)
### (On Behalf of the Maine Class)

133. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

134. By reason of the conduct alleged herein, Defendant has violated Me. Rev. Stat. Ann. tit. 5 §§ 205-A, *et seq.*

135. Defendant acted through its unlawful tying scheme to restrain or monopolize trade in the market for Compatible Parts.

136. Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Maine, for the purpose of unfairly excluding competition or controlling, fixing, or maintaining prices in the Compatible Parts Market.

137. Class members purchased Compatible Parts within the State of Maine during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

138. Defendant's violations of Maine law were flagrant.

139. Defendant's unlawful conduct substantially affected Maine's trade and commerce.

140. By reason of the foregoing, the Plaintiff and the members of the Maine Class are entitled to seek all forms of relief, including treble damages, reasonable attorneys' fees and costs, and injunctive relief available under Me. Rev. Stat. Ann. tit. 5 § 213.

## ELEVENTH CLAIM FOR RELIEF
### (Md. Code Ann. Comm. Law §§ 11-201 *et seq.*)
### (On Behalf of the Maryland Class)

141.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

142.    Maryland class members purchased Compatible Parts within the State of Maryland during the Class Period. But for Defendant's conduct set forth herein, the price Plaintiffs paid for Compatible Parts would have been lower.

143.    Under Md. Code Ann. Comm. Law § 11-209, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Defendant engaged in an unlawful tying scheme, a substantial part of which occurred in Maryland to restrain or monopolize trade or commerce in the market for Compatible Parts, in violation of Md. Code Ann. Comm. Law §§ 11-201 *et seq.*

144.    Defendant's unlawful conduct substantially affected Maryland's trade and commerce.  As a direct and proximate result of Defendant's conduct, members of the Maryland class were injured and are threatened with injury with respect to purchases of Compatible Parts in Maryland in that they paid and will pay supra-competitive prices for Compatible Parts.

145.    By reason of the foregoing, members of the Maryland class are entitled to all forms of relief, including actual damages, treble damages, interest, costs, reasonable attorneys' fees, and injunctive or other appropriate equitable relief available under Md. Code Ann. Comm. Law §§ 11-201.

## TWELFTH CLAIM FOR RELIEF
**(Mass. Gen. Laws ch. 93A, §§ 2, *et seq.*)**
**(On Behalf of the Massachusetts Class)**

146. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

147. Massachusetts class members purchased Compatible Parts within the Commonwealth of Massachusetts during the Class Period. But for Defendant's conduct set forth herein, the price Massachusetts class members paid for Compatible Parts would have been lower.

148. Under Mass. Gen. Laws ch. 93A §§ 9(2), 11, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint.

149. Defendant engaged in an unlawful tying scheme, a substantial part of which occurred in Massachusetts, to restrain or monopolize trade or commerce in the market for Compatible Parts, in violation of Mass. Gen. Laws ch. 93A.

150. Defendant's unlawful conduct substantially affected Massachusetts' trade and commerce.

151. As a direct and proximate result of Defendant's conduct, members of the Massachusetts class were injured and are threatened with injury with respect to purchases of Compatible Parts in Massachusetts in that they paid and will pay supra-competitive prices for Compatible Parts.

152. By reason of the foregoing, members of the Massachusetts class are entitled to all forms of relief, including actual damages, treble damages, interest, costs, reasonable attorneys' fees, and injunctive or other appropriate equitable relief available under Mass. Gen. Laws ch. 93A §§ 9, 11.

**THIRTEENTH CLAIM FOR RELIEF**
**(Michigan Compiled Laws Ann. §§ 445.771 *et seq.*)**
**(On Behalf of the Michigan Class)**

153.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

154.    The Michigan Antitrust Reform Act aims "to prohibit contracts, combinations, and conspiracies in restraint of trade or commerce…to prohibit monopolies and attempts to monopolize trade or commerce…[and] to provide remedies, fines, and penalties for violations of this act." Mich. Act 274 of 1984.

155.    Michigan Class members purchased Compatible Parts within the State of Michigan during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

156.    Under the Michigan Antitrust Reform Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Mich. Comp. Laws. § 452.778(2).

157.    Defendant acted through its unlawful tying scheme, a substantial part of which occurred in Michigan, to restrain or monopolize trade or commerce in the market for Compatible Parts, in violation of Mich. Comp. Laws §§ 445.772, *et seq.*

158.    Defendant's unlawful conduct substantially affected Michigan's trade and commerce.

159.    Members of the Michigan Class were injured and are threatened with injury with respect to purchases of Compatible Parts in Michigan in that they paid and will pay supracompetitive prices for Compatible Parts due to Defendant's unlawful conduct, and are entitled to  all forms of relief, including actual damages, treble damages for flagrant violations, interest, costs, reasonable attorneys' fees, and injunctive or other appropriate equitable relief.

**FOURTEENTH CLAIM FOR RELIEF**
**(Minnesota Ann. Stat.  §§ 325D.49 *et seq.*)**
**(On Behalf of the Minnesota Class)**

160.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

161.    The Minnesota Antitrust Law of 1971 aims to prohibit any contract, combination, or conspiracy when any part thereof was created, formed, or entered into in Minnesota; any contract, combination or conspiracy, wherever created, formed or entered into; any establishment, maintenance or use of monopoly power; and any attempt to establish, maintain, or use monopoly power, whenever any of this affect Minnesota trade or commerce.

162.    Plaintiff and Minnesota Class members purchased Compatible Parts within the State of Minnesota during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

163.    Under the Minnesota Antitrust Act of 1971, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Minn. Stat. § 325D.56.

164.    Defendant engaged through its unlawful tying scheme in unreasonable restraint of trade or commerce in the market for Compatible Parts within the intrastate commerce of and outside of Minnesota; established, maintained, used, or attempted to establish, maintain, or use monopoly power over the trade or commerce in the market for Compatible Parts within the intrastate commerce of and outside of Minnesota; and fixed prices and allocated markets for Compatible Parts within the intrastate commerce of and outside of Minnesota, in violation of Minn. Stat. §§ 325D.49, *et seq.*

165.    Defendant's unlawful conduct substantially affected Minnesota's trade and commerce.

166.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the Minnesota Class have been injured in their business or property and are threatened with further injury in that they paid and will pay supra-competitive prices for Compatible Parts due to Defendant's unlawful conduct.

167.    By reason of the foregoing, the Plaintiff and the Minnesota Class are  entitled to seek all forms of relief available under Minnesota Stat. §§ 325D.49, *et seq.*

**FIFTEENTH CLAIM FOR RELIEF**
**(Mo. Ann. Stat. §§ 407.010, *et seq.*)**
**(On Behalf of the Missouri Class)**

168.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

169.    Chapter 407 of the Missouri Merchandising Practices Act (the "MMPA") generally governs unlawful business practices, including antitrust violations such as restraints of trade and monopolization.

170.    Members of the Missouri Class purchased Compatible Parts within the State of Missouri during the Class Period. But for Defendant's conduct set forth herein, the price per pound of Compatible Parts would have been lower.

171.    Under Missouri law, indirect purchasers have standing to maintain an action under the MMPA based on the facts alleged in this Complaint.

172.    Through its unlawful tying scheme, Defendant engaged in restraint of trade or commerce of Compatible Parts within the intrastate commerce of Missouri, and monopolized or attempted to monopolize the market for Compatible within the intrastate commerce of Missouri by possessing monopoly power in the market and willfully maintaining that power through the

tying of Compatible Parts to the sales of its motorcycles in violation of Mo. Ann. Stat. § 407.010, *et seq.*

173.    Members of the Missouri Class were injured with respect to purchases of Compatible Parts in Missouri and are entitled to all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief.

**SIXTEENTH CLAIM FOR RELIEF**
**(Nebraska Rev. Stat. §§ 59-801 *et seq.*)**
**(On Behalf of the Nebraska Class)**

174.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

175.    Chapter 59 of the Nebraska Revised Statute generally governs business and trade practices. Sections 801 through 831 thereof, known as the Junkin Act, prohibit antitrust violations such as restraints of trade and monopolization.

176.    Nebraska Class members purchased Compatible Parts within the State of Nebraska during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

177.    Under Nebraska law, indirect purchasers have standing to maintain an action under the Junkin Act based on the facts alleged in this Complaint. Neb. Rev. Stat. § 59-821.

178.    Through its unlawful tying scheme, Defendant engaged in restraint of trade or commerce of Compatible Parts within the intrastate commerce of Nebraska, and monopolized or attempted to monopolize the market for Compatible Parts within the intrastate commerce of Nebraska by possessing monopoly power in the market and willfully maintaining that power, in violation of Neb. Rev. Stat. §§ 59-801, *et seq.*

179.    Defendant's unlawful conduct substantially affected Nebraska's trade and commerce.

180.    Members of the Nebraska Class were injured and will continue to be injured with respect to purchases of Compatible Parts in Nebraska in that they paid and will pay supracompetitive prices for Compatible Parts due to Defendant's unlawful conduct, and are entitled to all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief.

**SEVENTEENTH CLAIM FOR RELIEF**
**(Nevada Rev. Stat. Ann. §§ 598A.010 *et seq.*)**
**(On Behalf of the Nevada Class)**

181.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

182.    The Nevada Unfair Trade Practice Act ("NUTPA") states that "free, open and competitive production and sale of commodities…is necessary to the economic well-being of the citizens of the State of Nevada." Nev. Rev. Stat. Ann. § 598A.030(1).

183.    Nevada Class members purchased Compatible Parts within the State of Nevada during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

184.    The policy of NUTPA is to prohibit acts in restraint of trade or commerce, to preserve and protect the free, open and competitive market, and to penalize all persons engaged in anticompetitive practices. Nev. Rev. Stat. Ann. § 598A.030(2). Such acts include, inter alia, price fixing, division of markets, allocation of customers, and monopolization of trade. Nev. Rev. Stat. Ann. § 598A.060.

185.   Under Nevada law, indirect purchasers have standing to maintain an action under NUTPA based on the facts alleged in this Complaint. Nev. Rev. Stat. Ann. § 598A.210(2).

186.   Defendant acted through its unlawful tying scheme to restrain the trade of Compatible Parts in Nevada and monopolized or attempted to monopolize trade or commerce of Compatible Parts, and willfully maintain that monopoly, within the intrastate commerce of Nevada, in violation of Nev. Rev. Stat. Ann. §§ 598A, *et seq.*

187.   Defendant's unlawful conduct substantially affected Nevada's trade and commerce.

188.   Members of the Nevada Class were injured and are threatened with injury with respect to purchases of Compatible Parts in Nevada in that at least thousands of sales of Defendant's Compatible Parts took place in Nevada, purchased by Nevada consumers at supracompetitive prices caused by Defendant's conduct.

189.   Accordingly, members of the Nevada Class are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, costs, and injunctive relief.

### EIGHTEENTH CLAIM FOR RELIEF
**(New Hampshire Rev. Stat. §§ 356:1 *et seq.*)**
**(On Behalf of the New Hampshire Class**

190.   The allegations in the preceding paragraphs are incorporated as if fully stated herein.

191.   Title XXXI of the New Hampshire Statutes generally governs trade and commerce. Chapter 356 thereof governs combinations and monopolies and prohibits restraints of trade. N.H. Rev. Stat. Ann. §§ 356:2, 3.

192.     New Hampshire Class members purchased Compatible Parts within the State of New Hampshire during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

193.     Under New Hampshire law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.H. Rev. Stat. Ann. § 356:11(II).

194.     Through its unlawful tying scheme, defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts Market, for the purpose of affecting competition or controlling, fixing, or maintaining prices, a substantial part of which occurred in New Hampshire, in violation of N.H. Rev. Stat. Ann. §§ 356:1, *et seq.*

195.     Members of the New Hampshire Class were injured and are threatened with injury with respect to purchases of Compatible Parts in New Hampshire in that they paid more and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendant's unlawful conduct, and are entitled to all forms of relief, including actual damages sustained, treble damages for willful or flagrant violations, reasonable attorneys' fees, costs, and injunctive relief.

**NINETEENTH CLAIM FOR RELIEF**
**(New Mexico Stat. Ann. §§ 57-1-1 *et seq.*)**
**(On Behalf of the New Mexico Class)**

196.     The allegations in the preceding paragraphs are incorporated as if fully stated herein.

197.     The New Mexico Antitrust Act aims to prohibit restraints of trade and monopolistic practices. N.M. Stat. Ann. § 57-1-15.

198.    New Mexico Class members purchased Compatible Parts within the State of New Mexico during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

199.    Under New Mexico law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.M. Stat. Ann. § 57-1-3.

200.    Defendant engaged in the restraint of trade through its unlawful tying scheme and monopolized or attempted to monopolize trade for Compatible Parts within the intrastate commerce of New Mexico, in violation of N.M. Stat. Ann. §§ 57-1-1, *et seq.*

201.    Defendant's unlawful conduct substantially affected New Mexico's trade and commerce.

202.    Members of the New Mexico Class were injured and will continue to be injured with respect to purchases of Compatible Parts in New Mexico in that they paid more and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendant's unlawful conduct, and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, costs, and injunctive relief.

### TWENTIETH CLAIM FOR RELIEF
**(The Donnelly Act, New York General Bus. Law §§ 340 *et seq.*)**
**(On Behalf of the New York Class)**

203.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

204.    Article 22 of the New York General Business Law general prohibits monopolies and contracts or agreements in restraint of trade, with the policy of encouraging competition or the free exercise of any activity in the conduct of any business, trade or commerce in New York. N.Y. Gen. Bus. Law § 340(1).

205.    New York Class members purchased Compatible Parts within the State of New York during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

206.    Under New York law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.Y. Gen. Bus. Law § 340(6).

207.    Through its unlawful tying arrangement, Defendant established or maintained a monopoly within the intrastate commerce of New York for the trade or commerce of Compatible Parts and restrained competition in the free exercise of the conduct of the business of Compatible Parts within the intrastate commerce of New York, in violation of N.Y. Gen. Bus. Law §§ 340, *et seq.*

208.    Defendant's unlawful conduct substantially affected New York's trade and commerce.

209.    Members of the New York Class were injured and are threatened with further injury with respect to purchases of Compatible Parts in New York in that they paid more and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendant's unlawful conduct, and are entitled to all forms of relief, including actual damages, treble damages, costs not exceeding $10,000, and reasonable attorneys' fees.

**TWENTY-FIRST CLAIM FOR RELIEF**
**(North Carolina General Stat. §§ 75-1 *et seq.*)**
**(On Behalf of the North Carolina Class)**

210.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

211.    By reason of the conduct alleged herein, Defendant has violated N.C. Gen. Stat. §§ 75-1.1, *et seq.*

212.    North Carolina Class members purchased Compatible Parts within the State of North Carolina during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

213.    Through the unlawful tying scheme, Defendant engaged in restraint of trade or commerce in the Compatible Parts market, a substantial part of which occurred within North Carolina.

214.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Compatible Parts market, for the purpose of affecting competition or controlling, fixing, or maintaining prices, a substantial part of which occurred within North Carolina.

215.    Defendant's conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of North Carolina.

216.    Defendant's trade practices are and have been immoral, unethical, unscrupulous, and substantially injurious to consumers.

217.    Defendant's conduct misled consumers, withheld material facts, and resulted in material misrepresentations to members of the North Carolina Class.

218.    Defendant's unlawful conduct substantially affected North Carolina's trade and commerce.

219.    As a direct and proximate result of Defendant's unlawful conduct, members of the North Carolina Class have been injured in their business or property and are threatened with further injury in that they paid more and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendant's unlawful conduct.

220.    By reason of the foregoing, members of the North Carolina Class are entitled to seek all forms of relief available, including treble damages, under N.C. Gen. Stat. §§ 75-1, *et seq.*

## TWENTY-SECOND CLAIM FOR RELIEF
### (North Dakota Century Code §§ 51-08.1-01 *et seq.*)
### (On Behalf of the North Dakota Class)

221.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

222.    The North Dakota Uniform State Antitrust Act generally prohibits restraints on or monopolization of trade. N.D. Cent. Code §§ 51-08.1, *et seq.*

223.    North Dakota Class members purchased Compatible Parts within the State of North Dakota during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

224.    Under the North Dakota Uniform State Antitrust Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.D. Cent. Code § 51-08.1-08.

225.    Through its unlawful tying scheme, Defendant engaged acted to restrain, or to monopolize trade or commerce in the market for Compatible Parts, and established, maintained, or used a monopoly, or attempted to do so, a substantial part of which occurred within North Dakota, for the purposes of excluding competition or controlling, fixing, or maintaining prices for Compatible Parts, in violation of N.D. Cent. Code §§ 51-08.1-02, 03.

226.    Defendant's violations of North Dakota law were flagrant.

227.    Defendant's unlawful conduct substantially affected North Dakota's trade and commerce.

228.    Members of the North Dakota Class were injured and will continue to be injured with respect to purchases in North Dakota in that they paid more and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendant's unlawful conduct, and are entitled to all forms of relief, including actual damages, treble damages for flagrant violations, costs, reasonable attorneys' fees, and injunctive or other equitable relief.

### TWENTY-THIRD CLAIM FOR RELIEF
### (Oregon Revised Statutes §§ 646.705 *et seq.*)
### (On Behalf of the Oregon Class)

229.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

230.    Chapter 646 of the Oregon Revised Statutes generally governs business and trade practices within Oregon. Sections 705 through 899 thereof govern antitrust violations, with the policy to "encourage free and open competition in the interest of the general welfare and economy of the state." Or. Rev. Stat. § 646.715.

231.    Oregon Class members purchased Compatible Parts within the State of Oregon during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

232.    Under Oregon law, indirect purchasers have standing under the antitrust provisions of the Oregon Revised Statutes to maintain an action based on the facts alleged in this Complaint. Or. Rev. Stat. § 646.780(1)(a).

233.    Through its unlawful tying scheme, Defendant engaged in restraint of trade or commerce of Compatible Parts and monopolized or attempted to monopolize the trade or commerce of Compatible Parts, and maintain that monopoly, a substantial part of which occurred within Oregon, in violation of Or. Rev. Stat. §§ 646.705, *et seq.*

234.   Defendant's unlawful conduct substantially affected Oregon's trade and commerce.

235.   Members of the Oregon Class were injured with respect to purchases of Compatible Parts within the intrastate commerce of Oregon, or alternatively to interstate commerce involving actual or threatened injury to persons located in Oregon, in that they paid more and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendant's unlawful conduct.

236.   Members of the Oregon Class are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, expert witness fees and investigative costs, and injunctive relief.

### TWENTY-FOURTH CLAIM FOR RELIEF
### (Rhode Island Antitrust Act, Rhode Island Gen. Law §§ 6-36-1 *et seq.*)
### (On Behalf of the Rhode Island Class)

237.   The allegations in the preceding paragraphs are incorporated as if fully stated herein.

238.   The Rhode Island Antitrust Act aims to promote the unhampered growth of commerce and industry throughout Rhode Island by prohibiting unreasonable restraints of trade and monopolistic practices that hamper, prevent, or decrease competition. R.I. Gen. Laws § 6-36-2(a)(2).

239.   Rhode Island Class members purchased Compatible Parts within the State of Rhode Island during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

240.   Under the Rhode Island Antitrust Act, as of July 15, 2013, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. R.I. Gen. Laws § 6-36-11(a).

241. Through its unlawful tying scheme, Defendant engaged in the restraint of trade of Compatible Parts within the intrastate commerce of Rhode Island, and established, maintained, or used, or attempted to establish, maintain, or use, a monopoly in the trade of Compatible Parts for the purpose of excluding competition or controlling, fixing, or maintaining prices within the intrastate commerce of Rhode Island, in violation of R.I. Gen. Laws §§ 6-36-1, *et seq.*

242. Members of the Rhode Island Class were injured and will continue to be injured with respect to purchases of Compatible Parts in Rhode Island in that they paid more and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendant's unlawful conduct, and are entitled to all forms of relief, including actual damages, treble damages, reasonable costs, reasonable attorneys' fees, and injunctive relief.

### TWENTY-FIFTH CLAIM FOR RELIEF
### (South Dakota Codified Laws §§ 37-1-3.1 *et seq.*)
### (On Behalf of the South Dakota Class)

243. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

244. Chapter 37-1 of the South Dakota Codified Laws prohibits restraint of trade, monopolies, and discriminatory trade practices. S.D. Codified Laws §§ 37-1- 3.1, 3.2.

245. South Dakota Class members purchased Compatible Parts within the State of South Dakota during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

246. Under South Dakota law, indirect purchasers have standing under the antitrust provisions of the South Dakota Codified Laws to maintain an action based on the facts alleged in this Complaint. S.D. Codified Laws § 37-1-33.

247.    Through its unlawful tying scheme, Defendant engaged in restraint of trade or commerce of Compatible Parts within the intrastate commerce of South Dakota, and monopolized or attempted to monopolize trade or commerce of Compatible Parts, and willfully maintain that monopoly, within the intrastate commerce of South Dakota, in violation of S.D. Codified Laws §§ 37-1, *et seq.*

248.    Defendant's unlawful conduct substantially affected South Dakota's trade and commerce.

249.    Members of the South Dakota Class were injured and will continue to be injured with respect to purchases of Compatible Parts in South Dakota in that they paid more and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendant's unlawful conduct, and are entitled to all forms of relief, including actual damages, treble damages, taxable costs, reasonable attorneys' fees, and injunctive or other equitable relief.

**TWENTY-SIXTH CLAIM FOR RELIEF**
**(Tennessee Code Ann. §§ 47-25-101 *et seq.*)**
**(On Behalf of the Tennessee Class)**

250.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

251.    By reason of the conduct alleged herein, Defendant has violated Tennessee Code Ann. §§ 47-25-101, *et seq.*

252.    Tennessee Class members purchased Compatible Parts within the State of Tennessee during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

253.    Defendant has engaged in unlawful practices which tend to advance or control the price or the cost to end users in the Compatible Parts market throughout Tennessee.

254.    Through its unlawful tying scheme, Defendant engaged in restraint of trade or commerce of Compatible Parts within the intrastate commerce of Tennessee, and monopolized or attempted to monopolize trade or commerce of Compatible Parts within the intrastate commerce of South Dakota, and maintain that monopoly, in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.*

255.    As a direct and proximate cause of Defendant's unlawful conduct, members of the Tennessee Class have been injured in their business or property and are threatened with further injury in that they paid more and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendant's unlawful conduct.

256.    By reason of the foregoing, members of the Tennessee Class are entitled to seek all forms of relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

### TWENTY-SEVENTH CLAIM FOR RELIEF
### (Utah Code Ann. §§ 76-10-3101 *et seq.*)
### (On Behalf of the Utah Class)

257.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

258.    The Utah Antitrust Act aims to "encourage free and open competition in the interest of the general welfare and economy of this state by prohibiting monopolistic and unfair trade practices, combinations and conspiracies in restraint of trade or commerce . . . ." Utah Code Ann. § 76-10-3102.

259.    Utah Class members purchased Compatible Parts within the State of Utah during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

260.   Under the Utah Antitrust Act, indirect purchasers who are either Utah residents or Utah citizens have standing to maintain an action based on the facts alleged in this Complaint. Utah Code Ann. § 76-10-3109(1)(a).

261.   Through its unlawful tying scheme, the Defendant engaged in the restraint of trade or commerce of Compatible Parts, and monopolized or attempted to monopolize trade or commerce of Compatible Parts, and maintain that monopoly, in violation of Utah Code Ann. §§ 76-10-3101, *et seq.*

262.   Members of the Utah Class who are either Utah residents or Utah citizens were injured and will continue to be injured with respect to purchases of Compatible Parts in Utah in that they paid more and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendant's unlawful conduct, and are entitled to all forms of relief, including actual damages, treble damages, costs of suit, reasonable attorneys' fees, and injunctive relief.

### TWENTY-EIGHTH CLAIM FOR RELIEF
#### (Vermont Stat. Ann. §§ 2453 *et seq.*)
#### (On Behalf of the Vermont Class)

263.   The allegations in the preceding paragraphs are incorporated as if fully stated herein.

264.   By reason of the conduct alleged herein, Defendant has violated the Vermont Statutes Annotated.

265.   Vermont Class members purchased Compatible Parts within the State of Vermont during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

266.   Through its unlawful tying scheme, the Defendant engaged in the restraint of trade or commerce of Compatible Parts, and monopolized or attempted to monopolize trade or

commerce of Compatible Parts, and maintain that monopoly, in violation of Vermont Stat. Ann. §§ 2453 *et seq.*

267.    Defendant's conduct has and had anticompetitive effects in the Compatible Parts market, as supra-competitive prices for Compatible Parts are passed on to end users.

268.    Defendant's unlawful conduct substantially affected Vermont's trade and commerce.

269.    As a direct and proximate result of Defendant's unlawful conduct, members of the Vermont Class have been injured in their business or property and are threatened with further injury in that they paid and will continue to pay more for Compatible Parts than they otherwise would in the absence of Defendant's unlawful conduct.

270.    By reason of the foregoing, members of the Vermont Class are entitled to seek all forms of relief available under Vermont Stat. Ann. §§ 2453 *et seq.*

### TWENTY-NINTH CLAIM FOR RELIEF
**(Va. Code Ann. 59.1-196 et seq )**
**(On Behalf of the Virginia Class)**

271.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

272.    Defendant's actions complained of herein constitute a violation of the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 *et seq.*

273.    Defendant has engaged with respect to Plaintiffs in practices prohibited by the Virginia Consumer Protection Act, including the restraint of trade and commerce and other anticompetitive conduct alleged above in violation of Va. Code Ann. §§ 59.1-9.1 *et seq.*

274.    Defendant's anticompetitive acts described above were knowing, willful, and constitute violations or flagrant violations of the Virginia Consumer Protection Act.

275. Defendant's unlawful conduct substantially affected Virginia's trade and commerce.

276. Through its unlawful tying scheme, the Defendant engaged in the restraint of trade or commerce of Compatible Parts, and monopolized or attempted to monopolize trade or commerce of Compatible Parts and maintain that monopoly, in violation of Va. Code Ann. §§ 59.1-196 *et seq.*

277. As a direct and proximate result of Defendant's unlawful conduct, members of the Virginia Class have been injured in their business and property in that they paid more for Compatible Parts than they otherwise would have paid in the absence of Defendant's unlawful conduct.

278. As a result of Defendant's violation of Section 59.1-9.1 of the Virginia Consumer Protection Act, members of the Virginia Class seek treble damages and their cost of suit, including reasonable attorneys' fees, pursuant to section 59.1-9.1 of the Virginia Code.

### THIRTIETH CLAIM FOR RELIEF
**(West Virginia Code §§ 47-18-1 *et seq.*)**
**(On Behalf of the West Virginia Class)**

279. The allegations in the preceding paragraphs are incorporated as if fully stated herein.

280. The violations of federal antitrust law set forth above also constitute violations of section 47-18-1 of the West Virginia Code.

281. West Virginia Class members purchased Compatible Parts within the State of West Virginia during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

282.    During the Class Period, through its unlawful tying scheme, the Defendant engaged in the restraint of trade or commerce of Compatible Parts, and monopolized or attempted to monopolize trade or commerce of Compatible Parts and maintain that monopoly, alleged above in violation of W. Va. Code §§ 47-18-1, *et seq.*

283.    Defendant's anticompetitive acts described above were knowing, willful, and constitute violations or flagrant violations of the West Virginia Antitrust Act.

284.    Defendant's unlawful conduct substantially affected West Virginia's trade and commerce.

285.    As a direct and proximate result of Defendant's unlawful conduct, members of the West Virginia Class have been injured in their business and property in that they paid more for Compatible Parts than they otherwise would have paid in the absence of Defendant's unlawful conduct.

286.    As a result of Defendant's violation of Section 47-18-3 of the West Virginia Antitrust Act, members of the West Virginia Class seek treble damages and their cost of suit, including reasonable attorneys' fees, pursuant to section 47-18-9 of the West Virginia Code.

### THIRTY-FIRST CLAIM FOR RELIEF
**(Wisconsin Stat. §§ 133.01 *et seq.*)**
**(On Behalf of the Wisconsin Class)**

287.    The allegations in the preceding paragraphs are incorporated as if fully stated herein.

288.    Chapter 133 of the Wisconsin Statutes governs trust and monopolies, with the intent "to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition." Wis. Stat. § 133.01.

289.    Wisconsin Class members purchased Compatible Parts within the State of Wisconsin during the Class Period. But for Defendant's conduct set forth herein, the price of Compatible Parts would have been lower.

290.    Under Wisconsin law, indirect purchasers have standing under the antitrust provisions of the Wisconsin Statutes to maintain an action based on the facts alleged in this Complaint. Wis. Stat. 133.18(a).

291.    Through its unlawful tying scheme, a substantial part of which occurred within Wisconsin, the Defendant engaged in the restraint of trade or commerce of Compatible Parts, and monopolized or attempted to monopolize trade or commerce of Compatible Parts and maintain that monopoly, with the intention of injuring or destroying competition therein, in violation of Wis. Stat. §§ 133.01, *et seq.*

292.    Members of the Wisconsin Class were injured with respect to purchases of Compatible Parts in Wisconsin in that the actions alleged herein substantially affected the people of Wisconsin, with consumers in Wisconsin paying substantially higher prices for Defendant's Compatible Parts in Wisconsin.

293.    Accordingly, members of the Wisconsin Class are entitled to all forms of relief, including actual damages, treble damages, costs and reasonable attorneys' fees, and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

A.      For an order Certifying a Nationwide Injunctive Relief Class and awarding Injunctive Relief under Section 15 U.S.C. § 26;

B.      For an order Certifying Damage Classes pursuant to the Indirect Statutes named herein;

C.      For an order declaring the Defendant's conduct violates the statutes referenced herein;

D.      For compensatory, statutory, damages in amounts provided by law; to be determined by the Court and/or jury;

E.      An award of statutory penalties to the extent available;

F.      For pre-judgment interest on all amounts awarded;

G.      For an order awarding the Class, their reasonable attorneys' fees and expenses and costs of suit.

H.      Such other relief as the Court deems just and equitable.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated:  November 16, 2022

**REINHARDT WENDORF & BLANCHFIELD**

*/s/Garrett D. Blanchfield*
Garrett D. Blanchfield (209855)
Brant D. Penney (316878)
332 Minnesota Street, Suite W1050
Telephone: (651) 287-2100
Facsimile: (651) 287-2103
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com

**GLANCY PRONGAY & MURRAY LLP**
Brian Murray (*Pro Hac* to be filed)
Lee Albert (*Pro Hac* to be filed)
Brian Brooks (*Pro Hac* to be filed)
230 Park Avenue, Suite 358
New York, NY 10169
Tel: (212) 682-5340
Fax: (212) 884-0988
bmurray@glancylaw.com

lalbert@glancylaw.com
bbrooks@glancylaw.com

**TOSTRUD LAW GROUP, P.C.**
Jon A. Tostrud (*Pro Hac* to be filed)            )
1925 Century Park East, Suite 2100
 Los Angeles, CA 90067
Telephone: (310) 278-2600
tostrud@tostrudlaw.com
acarter@tostrudlaw.com

**SPECTOR ROSEMAN & KODROFF PC**
William G. Caldes (*Pro Hac* to be filed)
Jeffrey L. Spector (*Pro Hac* to be filed)
Icee N. Etheridge (*Pro Hac* to be filed)
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: 215-496-0300
Fax: 215-496-6611
bcaldes@srkattorneys.com
jspector@srkattorneys.com
ietheridge@srkattorneys.com